[No. 32516-7-I.   Division One.   April 28, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. ROLAND ERIK RILES, *Appellant*.

*Eric J. Nielsen* and *Nielsen & Acosta*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *James W. Leslie, Lisa N. O'Toole*, and *Ann M. Foerschler, Deputies*, for respondent.

COLEMAN, J. — After a jury convicted Roland Riles of first degree rape of a child, the sentencing court imposed a term of community placement to follow his confinement. Riles argues that the court erred by attaching various conditions to his community placement term. First, he challenges the condition that he submit to polygraph and plethysmograph examinations. We hold that the lower court was authorized to order these tests to monitor Riles' compliance with other community placement conditions. Next, Riles claims that the condition prohibiting unapproved contact with minors is overbroad and vague. He also argues that the court's order was vague for imposing the conditions that he (1) avoid places where children congregate and (2) not frequent places where minors are known to congregate. Because each of these orders gives sufficient notice of what conduct is prohibited, we uphold all community placement conditions. Finally, because Riles has failed to show that a search warrant's supporting affidavit was insufficient or that his constitutional rights were denied at trial, we affirm his conviction and sentence.

In October 1992, six-year-old AJ spent a weekend with the Hendersons, who were friends of the boy's mother. At that time, 38-year-old Riles worked for the Hendersons as a live-in carpenter and handyman. When the Hendersons returned AJ to his home on October 11, his mother noticed that AJ was uncharacteristically sad and lethargic. AJ's lips appeared to be swollen. At around 3 A.M., AJ's mother discovered that her son was awake. AJ started crying and said that Riles had "stuck his penis up my butt." He later told his mother that Riles had worn a yellow condom. AJ also said that Riles covered his mouth and threatened to rape AJ again if he told anybody.

AJ's mother called the police. When officers arrived, AJ told them what had happened. AJ was taken to the emer-

gency room, where he told a doctor that Riles had put his penis in his butt. An examination of AJ's rectum revealed raw abrasions. Swabs revealed the presence of semen in AJ's mouth. In a follow-up examination, another doctor concluded that scar tissue on AJ's anal opening had been caused by penetrating trauma.

Seattle Police Detective Mark Hanf was assigned to investigate AJ's case on October 12, 1992. After AJ and his mother had returned from the hospital, Detective Hanf interviewed the mother at her house. After hearing the mother's story, Detective Hanf obtained a warrant to search the Hendersons' residence. The police seized an unused, yellow condom from Riles' bedroom. Detective Hanf and the prosecutor interviewed AJ the following day.

At a CrR 3.6 hearing before trial, Riles' attorney argued that Detective Hanf's affidavit in support of the search warrant failed to contain sufficient indicia of reliability. The affidavit failed to identify the source of Detective Hanf's information that AJ had accused Riles of rape. Because Detective Hanf did not interview AJ until the day after he applied for the warrant, Riles' attorney claimed that there was an insufficient showing that the information was based on personal knowledge from a reliable source. The lower court found that the affidavit was sufficient because the information could only have come from AJ's mother. The court reasoned that the short affidavit mentioned no names other than AJ's and his mother's.

After a lengthy trial, a jury convicted Riles of first degree rape of a child. The court sentenced Riles to 102 months of incarceration, followed by a term of community placement. The community placement order imposed the following conditions:

(6) Have no contact w/ victim or any minor-age children; . . .

. . . .

(8) submit to polygraph & plethysmograph testing upon request of therapist and/or CCO, at own expense;

. . . .

(10) avoid places where children congregate;

. . . .

(12) do not frequent places where minors are known to congregate without specific permission of sexual deviancy counselor or supervising CCO.

█ █ We first decide whether the sentencing court abused its discretion by ordering Riles to submit to polygraph and plethysmograph testing as a condition of his community placement. Riles claims that these community placement conditions are not authorized by statute because they require affirmative conduct, which is excluded from RCW 9.94A.030(11)'s definition of a "crime-related prohibition." Because the tests are merely a means to monitor compliance with other community placement conditions, we hold that the court is authorized to order polygraph and plethysmograph testing during community placement.

Generally, a defendant must object to a sentencing error to preserve the issue for appeal. *State v. Anderson*, 58 Wn. App. 107, 110, 791 P.2d 547 (1990). But a challenge to a sentence as being contrary to law may be raised for the first time on appeal. *Anderson*, 58 Wn. App. at 110. Because Riles alleges that the sentencing court imposed community placement conditions that are not statutorily authorized, we accept review of his claim. *See State v. Wiley*, 63 Wn. App. 480, 482, 820 P.2d 513 (1992) (reasoning that "a trial court exceeds its jurisdiction when it imposes a sentence contrary to law" and that RAP 2.5(a)(1) allows parties to challenge a trial court's jurisdiction for the first time on appeal); *cf. State v. Moen*, 129 Wn.2d 535, 545-47, 919 P.2d 69 (1996) (entry of untimely restitution order is not a jurisdictional defect, but may be raised for first time on appeal to ensure consistent application of SRA).

The validity of Riles' community placement conditions is governed by the Sentencing Reform Act, RCW 9.94A.

The SRA authorizes the court to impose various special conditions on a sex offender's community placement term, including orders that "[t]he offender shall comply with any crime-related prohibitions[.]" RCW 9.94A.120(9)(c)(v). The definition of a "crime-related prohibition" specifically excludes orders that the offender perform affirmative conduct:

> "Crime-related prohibition" means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted, and shall not be construed to mean orders directing an offender affirmatively to participate in rehabilitative programs or to otherwise perform affirmative conduct.

RCW 9.94A.030(11).

We hold that requiring polygraph and plethysmograph testing is not an order to perform affirmative conduct under RCW 9.94A.030(11). Division Three of this court has held that polygraph testing requires active conduct and is thus not authorized. *State v. Holland*, 80 Wn. App. 1, 4, 905 P.2d 920 (1995). But this court has squarely disagreed with Division Three's reasoning in *State v. Eaton*, 82 Wn. App. 723, 919 P.2d 116 (1996), *implied overruling on other grounds recognized in State v. Frohs*, 83 Wn. App. 803, 811 n.2, 924 P.2d 384 (1996). *Eaton*'s reasoning is persuasive. The court held that requiring polygraph testing is not itself a sentencing condition, but rather a necessary and effective method to monitor an offender's compliance with crime-related conditions. *Eaton*, 82 Wn. App. at 733; *see also* WAC 246-930-310. Here, the orders to submit to testing do not prohibit any conduct. Thus, they are not "crime-related prohibitions" and RCW 9.94A.030(11)'s ban on affirmative conduct is inapplicable.

Although the court is authorized to order polygraph and plethysmograph testing during a sex offender's community placement term, the testing must be limited to topics that are related to Riles' crime. While the challenged order does not expressly limit the scope of the testing, we hold

that a sufficient limitation is implicitly imposed considering the order's context. The tests were ordered to monitor Riles' compliance with the crime-related prohibitions against being around children. The community placement order thus contains its own internal limitation. Riles fears that he will be tested on topics unrelated to the crime for which he was convicted. If his therapist or community corrections officer orders testing for impermissible purposes, Riles may challenge the order as applied at that time.

■ Riles next argues that the community placement conditions that he have "no contact" with children, "avoid places where children congregate," and "not frequent places where minors are known to congregate" are unconstitutionally vague. Because ordinary people can understand what conduct is proscribed and the conditions do not invite an inordinate amount of enforcement discretion, we hold that Riles has failed to show that any challenged condition is unconstitutionally vague on its face.

■■ Initially, we note that Riles has standing to challenge these conditions even though he has not been charged with violating them. While a person generally must be charged with violating a statute before it can be challenged on vagueness grounds, a potentially vague community placement condition involves different considerations. *See State v. Llamas-Villa*, 67 Wn. App. 448, 455, 836 P.2d 239 (1992). "A criminal defendant's constitutional rights during community placement are subject to the infringements authorized by the [Sentencing Reform Act (SRA)]." *Llamas-Villa*, 67 Wn. App. at 455. Thus, constitutional review of community placement conditions is confined to the issue of whether they comport with the SRA. Because Riles essentially argues that the sentencing court acted beyond its authority, we proceed to the merits of his vagueness claim. *Wiley*, 63 Wn. App. at 482.

■ Due process requires that criminal prohibitions provide adequate notice of what conduct is prohibited and standards to prevent arbitrary enforcement. *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993). But the

constitution does not require "impossible standards of specificity" or "mathematical certainty" because some degree of vagueness is inherent in the use of language. *Halstien*, 122 Wn.2d at 118. A party challenging a prohibition must overcome a presumption of constitutionality. *Halstien*, 122 Wn.2d at 118. Riles has failed to meet this burden.

We uphold the condition that Riles have "no contact" with children. While contact may be defined as physical touching, or more broadly as associating or interacting with others, a person of common intelligence would understand it in this context to denote "a condition or an instance of meeting, connecting, or communicating" with children. WEBSTER'S THIRD NEW INT'L DICTIONARY 490 (1986). This court has upheld a community placement condition that a convicted drug dealer "not associate" with drug users against a vagueness challenge. *Llamas-Villa*, 67 Wn. App. at 452. Similarly, the condition that Riles have no contact with children is not unconstitutionally vague.

We also reject Riles' vagueness challenges to the conditions that he "avoid places where children congregate" and "not frequent places where minors are known to congregate[.]" While these terms lend themselves to a certain level of subjectivity, a person of common intelligence would understand the conditions to prohibit Riles from going to places where children commonly assemble. Riles argues that the condition will preclude him from all public places. But this challenge can best be resolved as applied to Riles' actual conduct if and when he is accused of violating a condition. Facially, the sentencing court's conditions are sufficient to place a reasonable person on notice of what conduct is prohibited and to prevent arbitrary enforcement.

Riles next argues that the community placement prohibition on contact with children is overbroad because it infringes his constitutional rights of free association and speech. But as stated earlier, a defendant's constitutional

rights during community placement are subject to the infringements authorized by the SRA. *See State v. Ross*, 129 Wn.2d 279, 287, 916 P.2d 405 (1996). RCW 9.94A.120(9)(c)(ii) expressly authorizes the sentencing court to condition a sex offender's community placement by ordering that "[t]he offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals[.]" The offender's freedom of association may be reasonably restricted. *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993). Because the challenged order is plainly authorized by the SRA, we reject Riles' overbreadth argument and uphold the no-contact condition.

Turning to the issues raised in Riles' pro se supplemental brief, we next decide whether the affidavit in support of the warrant failed to establish probable cause to search the Hendersons' home because the affiant recklessly failed to state the source of his information that AJ had accused Riles of rape. Although the affidavit is not in the appellate record, we hold that the alleged omission was not material and affirm.

In evaluating the existence of probable cause in relation to an informant's tips, the affidavit in support of a warrant must establish the basis of the information and the informant's credibility. *State v. Jackson*, 102 Wn.2d 432, 433, 688 P.2d 136 (1984). An affidavit's omissions may affect the warrant's validity if they are material and made with reckless disregard for the truth. *State v. O'Connor*, 39 Wn. App. 113, 116-17, 692 P.2d 208 (1984), *review denied*, 103 Wn.2d 1022 (1985). Courts presume that affidavits supporting search warrants are valid. *O'Connor*, 39 Wn. App. at 117.

In this case, although Detective Hanf apparently failed to state the source of his information, it is clear that it was AJ's mother. The lower court indicated that the only people named in the short affidavit were AJ and his mother. In these circumstances, the failure to expressly state that the affiant learned his information from the

mother does not constitute a material omission. The mother's veracity is sufficiently established by the fact that she is named and would have no apparent reason to lie about her son's accusation. Moreover, her basis of knowledge is established even though it comes secondhand through AJ. "If the informant's information is hearsay, the basis of knowledge prong can be satisfied if there is sufficient information so that the hearsay establishes a basis of knowledge." *Jackson*, 102 Wn.2d at 437-38.

While it would have been preferable for Detective Hanf to state that AJ's mother had provided the information, his failure to do so was not fatal. Probable cause inquiries allow room to assess the unique facts of each case. *Jackson*, 102 Wn.2d at 440. In this case, the affidavit supports the inference that the affiant learned his information from AJ's mother after she had heard her son's story and verified at the hospital the fact of anal trauma. We hold that the affidavit established probable cause to believe that Riles had raped AJ.

■ Riles next argues pro se that he was denied the effective assistance of counsel, pointing to numerous allegedly prejudicial deficiencies. To show ineffective assistance, a defendant must overcome the presumption that trial counsel performed sufficiently by proving that counsel's performance was deficient and that it prejudiced the defense. *E.g.*, *State v. Sardinia*, 42 Wn. App. 533, 539, 713 P.2d 122, *review denied*, 105 Wn.2d 1013 (1986). We hold that Riles has failed to meet this heavy burden in each challenge to his trial counsel's performance.

■ ■ Riles' claim that his attorney failed to conduct a thorough investigation is not supported by the record. While he complains that counsel did not hire an independent investigator to discover mitigating facts, witnesses, or inculpatory evidence, Riles offers no explanation of what this evidence might entail. Riles' assertion that counsel was not aware that the State intended to introduce evidence obtained during the search warrant's execution is plainly contradicted by counsel's objection to that evi-

dence at the pretrial CrR 3.6 hearing. And while defense counsel may not have interviewed all the State's witnesses before trial, his questions on cross-examination reveal that he was reasonably prepared to expose the weaknesses in each witness's testimony.

Riles also claims that counsel failed to contact potential alibi witnesses. But again, he offers no more than conclusionary assertions that any such witnesses existed. Appellate courts will not consider matters outside the trial record when a defendant claims ineffective assistance on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We decline the invitation to speculate that defense counsel would have discovered alibi witnesses by conducting a more thorough investigation.

Similarly, we reject Riles' claim that his attorney was ineffective for failing to present defense medical experts. We can only speculate whether an investigation would have produced an expert who would have testified that AJ's anal abrasions were caused by constipation or varicose veins, as Riles suggests. Counsel adequately revealed the inconclusive nature of the State's medical tests.

Riles argues that counsel prejudiced his defense by referring to the Westley Allan Dodd case during voir dire. Even assuming that this fell below an objective standard of reasonableness, we hold that the result of the trial would have been no different if counsel had not made this comment.

We also hold that Riles' attorney was not ineffective for failing to object to inadmissible medical testimony. A review of the record shows that the State's medical experts were qualified to testify on child rape examinations and testing. While the witnesses admitted that contamination and human error are factors to consider in evaluating test results, Riles has failed to show that the swabs performed on AJ are not sufficiently established in the scientific community to be admissible. His attorney effectively highlighted the pitfalls of the medical tests performed and the inconclusive nature of their results for the jury to

consider. In sum, we hold that Riles has failed to rebut the presumption that he received constitutionally adequate representation at trial.

▮▮▮▮▮ Riles finally argues that by allowing evidence of the State Patrol's Crime Lab testing and not ordering DNA testing, the trial court violated his right to equal protection. The equal protection clauses of the Fourteenth Amendment and Washington Constitution, article I, section 12 require that persons similarly situated receive like treatment under the law. *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987). Riles' claim rests upon the theory that he was entitled to DNA testing because it has been used in other criminal prosecutions. We reject Riles' argument. There is no indication that Riles requested DNA tests below. He offers no authority for the proposition that the court is constitutionally required to order DNA testing.

We affirm the judgment and sentence.

AGID and COX, JJ., concur.

Review granted at 133 Wn.2d 1009 (1997).