[No. 35779-8-II. Division Two. July 1, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. RUSSELL RAYMOND VANT, *Appellant*.

*Thomas E. Doyle* and *Patricia A. Pethick*, for appellant.
*Edward G. Holm, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

¶1 Penoyar, J. — A jury convicted Russell Vant of a protection order violation and a sex offender registration

violation. Vant appeals the protection order violation conviction on the ground that the State produced insufficient evidence to prove that the home where he was seen by his community corrections officer (CCO) was the protected party's "residence." Vant further asserts that the State failed to prove a prior out-of-state conviction or conduct a comparability analysis, as required. Vant alleges that the trial court erred by including two prior convictions in his offender score that the State did not prove, imposing improper conditions for community custody, and sentencing him in excess of the maximum sentence possible. We affirm but remand for a new sentencing hearing and clarification of Vant's judgment and sentence.

## FACTS

¶2 A restraining order entered on January 3, 2006, prevented Vant from knowingly coming within one mile of his niece, Raven Carter, or her residence. On August 29, 2006, two CCOs familiar with Vant observed him on the porch of 7030 Steamboat Island Road Northwest in Thurston County. That address is the home of Vant's sister, who is Carter's mother.

¶3 Eric Kolb, a detective in the Thurston County sexual offender registration unit, supervised Vant as a sexual offender. Without a stable residence, Vant met with Detective Kolb on July 14, 2006 to "[register] as a transient in Thurston County." Report of Proceedings (RP) (Dec. 20, 2006) at 39. At the meeting, Kolb instructed Vant to "check in . . . every single Monday" at the Thurston County Sheriff's Office to keep Kolb apprised of his whereabouts. RP (Dec. 20, 2006) at 42. Vant last signed in with the sheriff's office on August 14, 2006. Between August 14 and Vant's arrest in October 2006, the sheriff's office had not received any letters or phone calls from Vant explaining his absence. Vant was subsequently arrested and charged with

violating the order prohibiting contact and violating sex offender registration requirements.[1]

¶4 At trial, Vant testified that he "assumed" Carter lived with her mother but that he was told that Carter would not be home, so he went over to "get some laundry" and "[take] a bath." RP (Dec. 20, 2006) at 75. Vant further testified, with respect to the sexual offender registration, that Detective Kolb explained the registration rules to him but that his "comprehension is not that good." RP (Dec. 20, 2006) at 77. When asked on cross-examination if he reported to the police after August 14, Vant responded, "I'm not aware of what I did or didn't do." RP (Dec. 20, 2006) at 84.

¶5 Carter testified as well, noting that she lived only "[o]ff and on" with her mother during August 2006. RP (Dec. 20, 2006) at 9. She testified that she was not at her mother's house on August 29, when Vant was seen on the porch, but that she was there the next day when police came to take her statement. Carter testified that she received mail at her mother's house and that she kept personal belongings and property there as well.

¶6 The jury convicted Vant on both counts, and the trial court sentenced him on January 11, 2007. The trial court sentenced Vant to 18 months' confinement and 36 to 48 months' community custody. Additionally, the trial court ordered Vant to refrain from possessing or consuming any controlled substances or from possessing or perusing any "sexually explicit images" at his CCO's discretion. Clerk's Papers (CP) at 36. The trial court further ordered Vant to submit to random urinalysis/portable breath test/blood alcohol content (urinalysis/PBT/BAC) tests and random polygraph tests at his CCO's discretion.

¶7 Vant now appeals.

---

[1] Contrary to RCW 9A.44.130(11)(a), RCW 26.50.110(1), RCW 10.99.020, and RCW 10.99.050.

## ANALYSIS

### I. Sufficiency of the Evidence

¶8 The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980). When the sufficiency of evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn from it. *State v. Theroff*, 25 Wn. App. 590, 593, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385, 622 P.2d 1240 (1980); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (en banc). Credibility determinations are for the trier of fact and are not subject to review. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (citing *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75 (citing *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)).

¶9 Under RCW 10.99.050(2)(a), willful violation of a protection order issued under RCW 10.99.050 is punishable, and knowledge is a necessary statutory element of a protection order violation. Under the protection order provisions, Vant was not to have any contact with Raven Carter, or knowingly come within one mile of Carter's residence.[2] No address was listed on the protection order. The jury was instructed that if Vant, knowing of these provisions, willfully violated the order by knowingly enter-

---

[2] The Thurston County Superior Court issued the protection order pursuant to chapter 10.99 RCW, and it was in effect.

ing or coming within one mile of Carter's residence, he should be convicted of the offense.

¶10 Carter testified that she was living "[o]ff and on" at her mother's house the end of August 2007. RP (Dec. 20, 2006) at 9. She also testified that her personal property and possessions were kept at her mother's house. She could not remember exactly where she stayed the week of the violation, but Carter did recall being at her mother's house on August 30 when a deputy stopped by the house to take her statement. Additionally, Carter received her mail at her mother's address.

¶11 Jurors heard from Vant as well, who replied "yes" when asked by the State if he knew that Carter lived with her mother. RP (Dec. 20, 2006) at 87. Further, when asked by his own counsel if he was aware that Carter was living with her mother, Vant responded, "I assumed [Carter] was living there. I mean, [my sister] told me [Carter] wouldn't be there and I could go and get my stuff." RP (Dec. 20, 2006) at 75.

■ ¶12 In his appeal, Vant argues that the dictionary definition of "residence" does not align with Carter's testimony regarding her living habits when he visited his sister's house on August 29, 2007. Appellant's Br. at 8. Per Vant, citing *Webster's Dictionary*, "residence" means:

> "the act . . . of abiding or dwelling in a place for some time: an act of making one's home in a place . . . ; the place where one actually lives or has his home distinguished from his technical domicile; . . . a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit. . . ."

Appellant's Br. at 7 (alterations in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1931 (1969)).

■ ¶13 Under this definition, any reasonable jury could easily find, beyond a reasonable doubt, that Carter, in fact, "resided" at her mother's house. She testified that though she did not live there all the time, she did live there off and on, kept personal belongings there, and received mail there.

Carter may not have lived there full time, but her testimony indicates that her mother's house was at least a "temporary . . . dwelling" to which she intended to return. RP (Dec. 20, 2006) at 9. Further, the jury heard that Carter returned to her mother's house the day after Vant's visit, as the police took her statement. Vant relies heavily on the idea that Carter did not reside at her mother's but, rather, that it was more of a "technical domicile." Appellant's Br. at 8.

¶14 Regardless, Vant's own testimony demonstrated to the jury that he "assumed" Carter lived there and that he was attempting to visit when she would not be home. RP (Dec. 20, 2006) at 75. Even under the "residence" definition Vant presented, any reasonable trier of fact could have found Vant guilty of "knowingly coming within one mile of the residence of Raven Carter," thus violating the protection order. CP at 25 (Instruction 12).

II. COMPARABILITY

¶15 Vant argues that because the State did not prove his 1984 Georgia felony conviction or show that it is "comparable" to a Washington felony, it should not have been used in calculating his offender score.[3] *State v. Cabrera*, 73 Wn. App. 165, 168, 868 P.2d 179 (1994). In fact, the State did not present proof of conviction or of comparability at sentencing.[4] Had this prior felony been omitted from his score, his standard range would have decreased from 17-22 months to 4-12 months. RCW 9.94A.525(16). Further, Vant, citing *In re Personal Restraint of Cadwal-*

---

[3] The Georgia court convicted Vant of rape while armed with a deadly weapon in 1984.

[4] Defense counsel did not object to this omission in the State's recommendation. Distinguishing his case from *State v. Ford*, 137 Wn.2d 472, 485, 973 P.2d 452 (1999) (where the Washington Supreme Court remanded and permitted the State to prove the disputed matters because "defense counsel has some obligation to bring the deficiencies of the State's case to the attention of the sentencing court"), Vant argues that, here, there was no State case to object to.

Issues not raised in the trial court may not generally be heard for the first time on appeal. *State v. Moen*, 129 Wn.2d 535, 543, 919 P.2d 69 (1996). There is an exception to this rule for illegal or erroneous computations of an offender score that alter the defendant's standard range. *Ford*, 137 Wn.2d at 477.

*lader*, 155 Wn.2d 867, 123 P.3d 456 (2005), argues that upon remand for resentencing, the State should be held to the existing record and prohibited from providing new information or analysis to the court.

¶16 The State points out, however, that Vant provided the trial court with proof of his out-of-state conviction when he stipulated, on the record, that he was "previously convicted of a felony sex offense." RP (Dec. 20, 2006) at 63. Further, the State argues that comparability analysis was unnecessary because for offender scoring purposes, it makes no difference whether the prior conviction was comparable to a class A, class B, or class C felony, or even whether it was a felony at all, only that it was a sex offense.

¶17 In Washington, persons required to register as a sex offender are described as having "been found to have committed or . . . been convicted of any sex offense or kidnapping offense . . ." RCW 9A.44.130(1). RCW 9.94A-.030(42) lists the various crimes considered to be "sex offenses."

¶18 The State properly points out that because Vant stipulated to the felony sex offense at trial, and did not dispute that he was required to register as a sex offender, he provided the trial court with the evidence required to prove by a preponderance of the evidence that the prior conviction should be included in his offender score. As such, this issue need not be remanded for resentencing; Vant's offender score properly included his 1984 out-of-state felony sex offense conviction. RCW 9.94A.525(2).

III. Prior Convictions

¶19 The State concedes that at sentencing they did not provide independent proof of two prior convictions for sex offender registration statute violations used to calculate Vant's offender score. It further concedes that the matter should be remanded for resentencing in light of this omission. Under *Ford*, the State contends that because Vant failed to object at sentencing, the State should be permitted

to introduce new evidence to prove the convictions on remand.[5] *Ford*, 137 Wn.2d at 485.

¶20 Though the State did not present a presentencing report, they did note Vant's prior convictions and its desire that these convictions be used to calculate Vant's offender score. Vant had an opportunity at that time to object or, at least, to demand that the State prove those prior offenses. Vant did not object or bring deficiencies of the State's assertions to light. As such, we remand for resentencing, where the State will be permitted to present appropriate proof of the convictions.

IV. COMMUNITY CUSTODY CONDITIONS

¶21 Vant contends that the trial court erred in ordering him to submit to random urinalysis/PBT/BAC, not to possess or peruse any sexually explicit images, and to submit to random polygraph tests as conditions of his probation.[6] The State disagrees, asserting that the trial court was well within its discretion to impose said conditions as part of Vant's sentence.

¶22 We review the imposition of community custody conditions for abuse of discretion and will reverse only if the trial court's decision is manifestly unreasonable or based on untenable grounds. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). A condition may be manifestly unreason-

---

[5] *Ford* states:

> [W]hile we necessarily hold that a sentence based on insufficient evidence may not stand, we recognize that defense counsel has some obligation to bring the deficiencies of the State's case to the attention of the sentencing court. Accordingly, where, as here, the defendant fails to specifically put the court on notice as to any apparent defects, remand for an evidentiary hearing to allow the State to prove the classification of the disputed convictions is appropriate. *See* [*State v.*] *McCorkle*, 88 Wn. App. [485,] 500[, 945 P.2d 736 (1997)]. This preserves the purpose of the [Sentencing Reform Act of 1981, chapter 9.94A RCW,] to impose fair sentences based on provable facts, yet provides the proper disincentive to criminal defendants who might otherwise purposefully fail to raise potential defects at sentencing in the hopes the appellate court will reverse without providing the State further opportunity to make its case.

*Ford*, 137 Wn.2d at 485-86.

[6] All at his CCO's discretion.

able if the trial court has no authority to impose it. *State v. Jones*, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003).

A. Random Polygraph Tests

 ¶23 Vant claims that under our decision in *State v. Flores-Moreno*, polygraph testing at the CCO's discretion without limitations as a sentencing condition is impermissible and constitutes an abuse of discretion by the trial court. 72 Wn. App. 733, 866 P.2d 648 (1994). As the State correctly notes, however, the Washington Supreme Court's subsequent decision in *State v. Riles* permits the condition, stating, "Trial courts have authority to require polygraph testing under RCW 9.94A.120(9)(c) [recodified in July 2001 as RCW 9.94A.505(8)] to monitor compliance with other conditions of community placement." 135 Wn.2d 326, 351-52, 957 P.2d 655 (1998).

¶24 Since *Riles* confirms the trial court's authority to order such testing by the CCO for the purpose of monitoring compliance with the other conditions of his sentence, we decline to overturn the condition. If Vant's CCO subjects him to improper questioning during a polygraph examination, he may challenge the conditions at that time. *See State v. Riles*, 86 Wn. App. 10, 16-17, 936 P.2d 11 (1997), *aff'd*, 135 Wn.2d 326.

B. Random Urinalysis/PBT/BAC

 ¶25 Vant next argues that the random testing the trial court ordered is not statutorily mandated and not an area of concern considering the nature of his offenses. Therefore, Vant contends, the trial court's imposition of such testing, at his CCO's discretion, is an abuse of the trial court's discretion and should be overturned. Vant's argument fails.

¶26 As a condition of his probation, Vant was ordered not to "possess/consume any controlled substances." CP at 36. This condition was properly issued under RCW 9.94A-.700(4)(c), which states that as a condition of community placement "the offender shall not possess or consume

controlled substances except pursuant to lawfully issued prescriptions." This condition is required unless the trial court waives it, regardless of the offense committed. RCW 9.94A.700(4). Stemming from this statutory authority, it follows, through *Riles*, 86 Wn. App. 10, that the trial court has the ability to enforce these conditions. As such, the trial court's imposition of random urinalysis/PBT/BAC tests to ensure compliance with its conditions does not constitute an abuse of discretion, and the condition should remain.

C. Sexually Explicit Materials

¶27 In the judgment and sentence, the trial court ordered Vant to refrain from possessing or perusing any "sexually explicit images per [his] CCO." CP at 36. Vant argues that the court abused its discretion in ordering this condition as the phrase "sexually explicit" is unconstitutionally vague as applied. Appellant's Br. at 16.

¶28 Vant relies on Division One's holding in *State v. Sansone*, which held a similar condition to be unconstitutionally vague. 127 Wn. App. 630, 638-41, 111 P.3d 1251 (2005). In that case, Sansone was prohibited from viewing pornographic materials without the approval and consent of his therapist or CCO. What constituted "pornographic" materials were to be defined and determined by the therapist and CCO as well. Upon discovering that Sansone was looking at provocative pictures of fully clothed women that the CCO deemed inappropriate, he was sentenced for violating the terms of his probation. *Sansone*, 127 Wn. App. at 634. In reversing the violation on the grounds that "pornographic" was unconstitutionally vague as applied, the court said:

> Although delegation to the probation officer or treatment provider to define a term in a community placement condition may be permissible in some circumstances, the vagueness is not cured by the delegation here.

*Sansone*, 127 Wn. App. at 634.

¶29 Vant notes that while the probationary terms in these cases are different, "[t]he fact that one term could be

defined so differently indicates the impropriety of delegation . . . ." *Sansone*, 127 Wn. App. at 643.

¶30 At the least, Vant's challenge is premature. Vant challenges the condition as applied; however, the State has not yet applied any sanctions to him for violating the condition. As such, it cannot be said that any future application of the condition will be unconstitutionally vague as applied to the facts. If the trial court does not modify these conditions on remand to address Vant's concerns, and if he is penalized for possessing or perusing something that he believes does not constitute "sexually explicit" material, he may challenge the condition at that time. *See Riles*, 86 Wn. App. at 16-17.

V. STATUTORY MAXIMUM FOR SENTENCE

¶31 The trial court sentenced Vant to 18 months' confinement on the charge of failing to register as a sex offender and a community custody range of 36 to 48 months. Combining both incarceration time and community custody time, the maximum possible total time Vant could serve would be 66 months, exceeding the statutory maximum allowed by 6 months. RCW 9A.20.021(1)(c). Vant asserts that this requires remand for resentencing within the allowable range of 60 months. Relying on *State v. Sloan*, 121 Wn. App. 220, 87 P.3d 1214 (2004), the State asserts that the trial court did not err in imposing community custody. The State concedes however, under *Sloan*, we should remand for the trial court to clarify that the total incarceration and community custody time cannot exceed the maximum sentence.

¶32 The State is correct, and *Sloan* is dispositive on this issue. The legislature sets the maximum punishment for every offense. *Sloan*, 121 Wn. App. at 221. The total punishment, including imprisonment and community custody, may not exceed the statutory maximum for a particular offense. *Sloan*, 121 Wn. App. at 221. Where a defendant is sentenced to the statutory maximum, and also sentenced to community custody, the judgment and sentence should

set forth the statutory maximum and clarify that the term of community custody cannot exceed that maximum. *Sloan*, 121 Wn. App. at 221.

¶33 The Sentencing Reform Act of 1981, chapter 9.94A RCW, requires community custody for most sex offenders:

> When a court sentences a person to the custody of the department [of corrections] for a sex offense not sentenced under RCW 9.94A.712, . . . the court shall in addition to the other terms of the sentence, sentence the offender to community custody for the community custody range established under RCW 9.94A.850 or up to the period of earned release awarded pursuant to RCW 9.94A.728 (1) and (2), whichever is longer.

RCW 9.94A.715(1). Except as relates to collection of restitution, a sentence may not exceed the statutory maximum term the legislature set. RCW 9.94A.505(5).

¶34 The facts in *Sloan* are similar to ours. There, the trial court sentenced the defendant to the statutory maximum of 60 months' confinement and an additional 36 to 48 months' community custody. The trial court reasoned that, although the defendant was sentenced to the statutory maximum, she may earn early release credits and transfer to community custody before serving the entire term. *Sloan*, 121 Wn. App. at 223 (citing RCW 9.94A.728(1), (2)(b)). The court explained that, in that event, the defendant would remain in community custody for up to the statutory range of 36 to 48 months but no longer than the 60-month maximum term. *Sloan*, 121 Wn. App. at 223. Division One of this court held that her total punishment did not exceed the statutory maximum and did not violate RCW 9.94A.505(5). Unlike this case, in *Sloan*, the judgment and sentence included a qualification that the " '[d]efendant is not to be incarcerated for any violations as upon her release she will have served the maximum time allowed.' " *Sloan*, 121 Wn. App. at 222.

¶35 Vant was sentenced to 18 months, and the court imposed an additional 36 to 48 months' community custody. Vant's judgment and sentence does not clarify that his term

of confinement plus community custody cannot exceed the maximum term the legislature set, and the judgment and sentence does not set forth the statutory maximum penalty. The State concedes that we should remand on this issue. We remand with directions to the trial court to insert the language suggested in *Sloan* setting forth the maximum sentence and clarifying that the combined term of confinement and community custody cannot exceed that maximum.

¶36 We affirm Vant's convictions but remand for a new sentencing hearing and for clarification of judgment and sentence consistent with this opinion.

VAN DEREN, C.J., and QUINN-BRINTNALL, J., concur.