# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67341-6-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| RODNEY BYRON SUMMERS, | ) ) | |
| | ) | |
| Appellant. | ) | FILED: June 10, 2013 |

GROSSE, J. — During jury deliberations in Rodney Summers' trial for child molestation and child rape, Summers participated by telephone in proceedings involving questions from the jury. For the first time on appeal, Summers contends the court violated his state and federal constitutional rights because he was not physically present when the court and counsel addressed the jury's questions. Because Summers fails to demonstrate manifest constitutional error, we affirm his conviction. We affirm his sentence in part, but remand for the court to strike the domestic violence penalty.

## FACTS

Based on allegations that Summers sexually abused his former step-daughter, the State charged him with one count of first degree child molestation and four counts of first degree rape of a child. During jury deliberations, the jury sent out two questions:

> [(1)] Re: Detective Martin - the detective was present throughout the trial. Midway in the trial, Detective Martin gave witness/testimony re the case. Is the dective [sic] allowed to be both co-council [sic] and/or the plaintiff and or the witness[?].

[(2)] A jury member goes home after the trial goes to the jury. The member looked up the definition of "presumption of innocence" & "beyond a reasonable doubt" Should the jurror [sic] be dismissed[?].

The court discussed these questions in open court with both counsel present. Although Summers was not present, he listened to the proceedings by telephone from the jail.

The court first called in and questioned the presiding juror. The juror said that Juror No. 3 had looked up the definitions of "presumption of innocence" and "reasonable doubt" in some books but had not disclosed what the books said. Neither counsel questioned the presiding juror.

The court then questioned Juror No. 3. He said the definitions he looked up were consistent with the definitions in the court's instructions. He confirmed that he did not tell the other jurors what he read. He told them only that there was no difference between what he read and the court's instructions. Defense counsel declined to ask any questions. Summers and his counsel then spoke privately by telephone.

Following a recess, the parties and the court continued to discuss the jury's questions with Summers listening on the telephone. The prosecutor proposed answering the jury's second question by re-reading the court's introductory instruction regarding the jurors' duties. Defense counsel agreed on the condition that the entire instruction would be re-read. Summers raised no objection.

The court called the jury in and re-read the instruction. The court asked if any of the jurors "heard something that would in any way affect your ability to

deliberate based on the evidence you heard and the instructions you received from the Court, and to put aside anything else you've heard." When no juror raised their hand, the court directed the jury to resume deliberations.

Shortly thereafter, the court answered the jury's first question as follows: "The state is allowed to designate a managing witness."

The jury convicted Summers as charged. He appeals.

ANALYSIS

For the first time on appeal, Summers contends the trial court violated his federal and state constitutional rights and CrR 3.4 when it answered jury questions during deliberations in his absence.[1] Summers fails to satisfy the criteria for review.

We generally will not review a claim of error raised for the first time on appeal.[2] An exception exists for "manifest" errors affecting a constitutional right.[3] Violations of procedural rules, such as CrR 3.4, do not satisfy this standard,[4] Violations of the state constitutional right to appear and defend or the federal constitutional right to be present may amount to manifest constitutional error if the defendant can plausibly show that the error had practical and identifiable consequences at trial.[5] This requires a showing of actual prejudice.[6]

---

[1] State v. Irby, 170 Wn.2d 874, 880-85, 246 P.3d 796 (2011) (addressing federal and state rights).
[2] RAP 2.5(a).
[3] RAP 2.5(a)(3).
[4] See State v. Gentry, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995).
[5] State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).
[6] State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).

Assuming without deciding that Summers had a constitutional right to be physically present during the court's handling of the jury inquiries, he fails to demonstrate that his absence resulted in actual prejudice. Contrary to Summers' assertions, prejudice in this setting is not presumed.[7] Moreover, while Summers was not physically present during the resolution of the jury's questions, it is undisputed that he participated in the proceedings by telephone and was afforded an opportunity to consult privately with his attorney. His speculative allegations as to what he or the jury might have done had he been physically present are insufficient to establish manifest error.[8]

In addition, Summers' analogy to cases involving denial of the right to a public trial is misplaced. Prejudice in such cases is presumed.[9] As noted above, prejudice is not presumed for violations of the right to be present or the right to appear and defend.[10]

Summers next challenges several conditions of his sentence.[11] He first contends the $100 domestic violence penalty imposed by the court pursuant to

---

[7] Irby, 170 Wn.2d at 886 (citing State v. Caliguri, 99 Wn.2d 501, 664 P.2d 466 (1983)). Summers' disagreement with the holdings in these cases must be addressed to the State Supreme Court.

[8] See O'Hara, 167 Wn.2d at 99 (in determining whether alleged error had identifiable consequences, "the trial record must be sufficient to determine the merits of the claim" and if the necessary facts are not in the record, the error is not manifest); State v. Sterling, 23 Wn. App. 171, 177, 596 P.2d 1082 (1979) ("speculation or possibility is insufficient to show prejudice").

[9] See State v. Paumier, 176 Wn.2d 29, 288 P.3d 1126 (2012).

[10] Irby, 170 Wn.2d at 886.

[11] The State contends this argument cannot be raised for the first time on appeal. But a trial court may impose a sentence only as authorized by statute, In re Pers. Restraint of Tobin, 165 Wn.2d 172, 175, 196 P.3d 670 (2008), and unauthorized conditions of a sentence may be challenged for the first time on appeal. State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999). Since Summers contends the

RCW 10.99.080 was unauthorized. He argues that the penalty can only be imposed for offenses committed after June 4, 2004. Because his offenses occurred before that date, he concludes, and the State does not dispute, that the statute and penalty are inapplicable. The State argues, however, that the penalty was nevertheless authorized by the court's discretionary power to impose a fine of up to $50,000 for each of Summers' felonies. But the court did not exercise that discretion. Rather, it specifically and expressly imposed the "Domestic Violence Penalty (for offenses committed after 06-04-2004)" under "RCW 10.99.080." Because that penalty is unauthorized in these circumstances, and because there is no indication that the court would have imposed a discretionary fine in lieu of the statutory penalty, we remand for the court to strike the penalty.

Summers also challenges a community custody condition requiring him to "Participate in polygraph and plethysmograph examinations as directed by the supervising Community Corrections Officer [(CCO)]." He contends plethysmograph testing is proper only if ordered by a sexual deviancy treatment provider because a CCO could order testing for reasons not related to treatment. This contention is controlled by State v. Riles.[12]

In Riles, the court upheld conditions requiring plethysmograph testing as part of the defendant's sexual deviancy treatment.[13] The conditions approved in

---

statute cited by the trial court does not authorize the penalty imposed, his argument may be raised for the first time on appeal.

[12] 135 Wn.2d 326, 957 P.2d 655 (1998).

[13] Riles, 135 Wn.2d at 343-45. The Riles court also struck a condition requiring plethysmograph testing because the offender was not also ordered to undergo sexual deviancy treatment or therapy. The court held that "[i]t is not permissible for a court to order plethysmograph testing without also imposing crime-related

Riles are substantially similar to the conditions imposed in this case. [14] In both cases, the defendants were ordered to participate in sexual deviancy treatment and to submit to plethysmograph testing at the direction of the CCO. Under Riles, the plethysmograph testing condition in this case is proper because it is accompanied by, and implicitly related to, a condition requiring sexual deviancy treatment. In the event plethysmograph testing is ordered for an impermissible purpose, Summers may challenge it at that time. [15]

For the first time on appeal, Summers also argues that, absent a finding that plethysmograph testing is likely to reap its intended benefits in this case, the

---

treatment which reasonably would rely upon plethysmograph testing as a physiological assessment measure." Riles, 135 Wn.2d at 345.

[14] The conditions upheld in Riles stated:

> (1) Within thirty days of release from confinement, enter into and make reasonable progress in . . . sexual deviancy therapy, with a therapist approved by your [CCO].
>
> . . . .
>
> (4) Submit to polygraph and plethysmograph testing upon the request of your therapist and/or [CCO], at your own expense.

Conditions 13 and 16 in this case state:

> 13. Participate in a sexual deviancy treatment with a certified provider and make progress in any recommended course of treatment. Follow all conditions outlined in your treatment contract. Do not change therapists without advanced permission of the supervising [CCO].
>
> . . . .
>
> 16. Participate in polygraph and plethysmograph examinations as directed by the supervising [CCO].

Riles, 135 Wn.2d at 337.

[15] See State v. Riles, 86 Wn. App. 10, 16-17, 936 P.2d 11(1997).

condition requiring such testing violates his right to freedom from bodily intrusion. But as the State points out, the alleged error is not manifest because the facts necessary to review it are not in the record. Consequently, the alleged error cannot be raised for the first time on appeal.[16]

Finally, Summers contends the condition requiring him to submit to polygraphs ordered by his CCO violates his right to privacy. He concedes that polygraphs may be used to monitor conditions of community custody, but argues that the condition in this case fails to expressly limit polygraph use to that purpose. We agree that the better practice is to expressly limit polygraph use and advise counsel and the court to do so in the future. Nevertheless, reversal is not required when, as here, polygraph use is implicitly limited when read in the context of the entire order.[17] In addition, if Summers is required to submit to a polygraph assessment, he may lodge his objection to the order as applied at that time.[18]

Affirmed in part and remanded in part.

_____

WE CONCUR:

_____        _____

---

[16] State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).
[17] State v. Combs, 102 Wn. App. 949, 952-53, 10 P.3d 1101 (2000).
[18] See Riles, 86 Wn. App. at 16-17.