# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>　v.<br><br>MANUEL ALVAREZ,<br><br>　　　　　　　Appellant. | No.  48560-5-II<br><br><br><br>UNPUBLISHED OPINION |

Worswick, J. — Alvarez appeals his conviction and sentence for two counts of first degree child molestation of A.R.  He argues that the trial court erred by (1) allowing the state to amend the charging information, (2) admitting improper opinion testimony, and (3) by improperly admitting testimony under the fact of complaint doctrine.  He also argues (4) that the prosecutor committed misconduct by improperly shifting the burden to Alvarez, misstating evidence, and eliciting improper testimony.  He further argues that (5) his counsel was ineffective for failing to properly object to testimony under the fact of complaint doctrine and for failing to properly object to the State's amendment of the information.  As to his sentence, Alvarez argues (6) that the court improperly imposed community custody conditions because the conditions were not crime related, vague, and violated his constitutional rights.  The State concedes that two of the community custody conditions and part of a third condition were not proper.  We affirm Alvarez's conviction but remand to the trial court to vacate or amend three community custody conditions.

FACTS

I. BACKGROUND

In approximately 2001, Alvarez began a romantic relationship with Elizabeth Reyna. Reyna had three children at the time: a daughter, A.R.; an older daughter, Joanna Sears; and a son. A.R. met Alvarez when she was approximately five years old. Alvarez treated A.R. like a daughter and A.R. felt safe with Alvarez.

When she was around six years old, A.R. and her family lived in an apartment building next to the apartment building where Alvarez lived. A.R. would go to Alvarez's apartment a couple of times a week. While at Alvarez's apartment, Alvarez would tell A.R. to lay next to him on a sofa. Alvarez would then put his hand down A.R.'s pants and touch her vagina and her buttocks. A.R. explained that Alvarez would "just leave [his hand] there. He wouldn't do anything. He would just place it down there." 6 Report of Proceedings (RP) at 72. A.R. could not remember how many times the touching occurred but estimated that it occurred "like ten times." 6 RP at 73. A.R. told Alvarez to stop the first time that he touched her, but Alvarez continued to touch her. A.R. did not tell anyone about the touching at the time because she thought it was "completely normal" for a father figure to do that sort of touching. 6 RP at 74.

A.R. and her family moved, and in 2008 or 2009, when A.R. was around 10 or 11 years old, they lived in the Chateau Rainier apartments. Alvarez lived with the family at the Chateau Rainer apartments sporadically for a few months at a time.

After Alvarez began living with A.R. and her family, Alvarez touched A.R. again. As A.R. was laying down on a couch, Alvarez touched her vagina and then took A.R. into Reyna's

bedroom, placed her on a bed, and continued to touch her vagina, moving his hand up and down. Alvarez also attempted to place his fingers in A.R.'s anus. A.R. told Alvarez to stop, but he continued to touch her until he fell asleep and A.R. went into the bathroom.

A.R. told Lettie Rodriguez, a close family friend, about the touching "a couple months" after the incident at Chateau Rainer occurred. 7 RP at 25. A day after telling Rodriguez about the abuse, A.R. and Rodriguez went to Sears's home and told her what had occurred. Sears then called Reyna and informed her of the abuse. Sears then drove A.R. and Rodriguez to Reyna's apartment.

Upon their arrival, Reyna was outside the apartment arguing with Alvarez. Reyna kicked Alvarez out of her home and threw his clothing outside of the apartment. A week later, A.R. spoke directly with Reyna about what Alvarez had done.

Shortly thereafter, Reyna took A.R. to therapy sessions. A.R. did not disclose the abuse to the therapist. Reyna did not tell the police about the abuse, and A.R. stopped going to therapy after four sessions.

Several years later, Jeovana Oshan, a psychiatric nurse practitioner completed a psychiatric intake evaluation of A.R. A.R. described the abuse to Oshan who reported it to Child Protective Services. A.R. later began seeing clinical psychologist Laura Penalvar-Vargas for counseling.

Detective Jeff Rackley began an investigation into A.R.'s alleged abuse. As part of this investigation, child forensic interviewer Keri Arnold interviewed A.R. and Reyna.

The State then charged Alvarez with four counts of first degree child molestation. The information noted that the time period for counts I-III was from May 20, 2003 until May 19, 2005. The time period for count IV was from May 2005 until May 19, 2007.

## II. PRETRIAL

Prior to trial, Alvarez filed a motion to exclude statements A.R. made to Reyna, family, and friends under child hearsay rules. The State agreed that the disclosure statements A.R. made to her family and friends were not admissible. However, the State anticipated that there would be some fact of complaint evidence presented.[1]

The trial court reserved ruling on Alvarez's motion to exclude A.R.'s statements made to her family and friends, and informed the parties that it would revisit this issue whenever it came up at trial. Alvarez's counsel also stated that he would "deal" with any issues regarding the evidence as "they come up" at trial. 2 RP at 24.

Alvarez initially objected to Vargas's testimony, but ultimately agreed that Vargas's testimony was admissible under the hearsay exception for medical diagnosis or treatment.

## III. TRIAL

At trial, A.R. testified consistently with the above facts. A.R. also testified that initially she was too scared to tell anyone about the abuse and she thought people would not believe her. A.R. testified that her relationship with Reyna was "[a]wkward and strange" after she disclosed

---

[1] In sex offense cases, the "fact of the complaint" hearsay exception allows the State to present evidence that the victim disclosed to someone after the assault, but evidence of the details of the complaint, including the identity of the offender and specifics of the act, is not admissible. *State v. Alexander*, 64 Wn. App. 147, 151, 822 P.2d 1250 (1992).

the abuse and that she felt that Reyna did not believe her. 7 RP at 31. A.R. also stated that she did not trust Reyna and felt that Reyna had betrayed her.

A.R. testified that she told Oshan to report the incidents because she wanted "justice." 7 RP at 34. A.R. also explained that she began therapy with Vargas because she was tired of hiding that Alvarez had abused her. A.R. testified that she spoke with Vargas about her relationship with Reyna and how the incidents with Alvarez affected their relationship. A.R. stated that due to the abuse, she no longer felt safe or comfortable around anyone.

Prior to Sears taking the stand and outside the presence of the jury, the trial court discussed the scope of Sears's testimony with the parties. The State asserted that it was planning to ask Sears about the circumstances surrounding the incidents. The court ruled that any testimony by Sears relating to Rodriguez's statements to her would be hearsay, but that Sears would be able to give background information related to timing and the family's living situations. Alvarez objected to Sears's testimony as redundant. The trial court responded:

> Well, I would have to say that the victim's testimony, the alleged victim's testimony, was not—as far as the chronology was concerned, was what you would expect from somebody trying to remember what happened when they were five or six or seven or eight. And that being the case, I don't think that Ms. Sears' testimony as to chronology and who was living where and when is cumulative.
> So I will note your objection. I'm going to overrule that objection, but do stay away from the hearsay. That's not admissible.

7 RP at 73.

Sears testified that A.R. was "[s]ix or seven" years old when Alvarez lived in the apartment building next to her family's apartment. 7 RP at 79. Sears also testified that when she

5

was 21 years old A.R. was 11 and also explained that when she was 21 years old, Rodriguez and A.R. came to her house and discussed the abuse, which would have been around 2008 or 2009.

Reyna also testified at trial. Reyna stated that after Sears called her and informed her that Alvarez had sexually abused A.R., she felt that her life had come apart and stated:

> I just wondered how was it that I had not realized. How was it that someone I trusted and had done something like this and I hadn't even noticed it?

7 RP at 116-17. Alvarez objected to Reyna's testimony as nonresponsive. The trial court sustained the objection, struck Reyna's testimony, and instructed the jury to disregard Reyna's answer.

Reyna testified that she threw Alvarez's clothing out of the apartment. When asked why, Reyna responded that she did not want Alvarez to live there any longer and stated, "How am I going to have someone who's abusing my daughter live there?" 7 RP at 119. Alvarez objected to the testimony and the trial court sustained the objection, struck the testimony from the record, and told the jury that they could not consider the statements.

Reyna also testified that her relationship with A.R was "[v]ery bad" from the time that A.R. was 11 to 15 years old. 7 RP at 121. Reyna stated that A.R. believed that Reyna did not love her, and that A.R. became very rebellious and did not want to go to school. When asked why she took A.R. to therapy, Reyna responded that improving her relationship with A.R. was one reason and that

> [o]ne of the reasons was because I wanted her to express what she felt. She felt that I didn't believe her. She said she felt that I had not believed her when she told me about these things and she blamed me for all of it. And so I took her there so that she could get what she had inside out and so that she could study better at school,

6

> she could be a better student, so she wouldn't be missing school. Because she told me because of all this turmoil, she wasn't able to concentrate at school.

7 RP at 135-36.

The State then moved to amend the information to amend the date range for all four counts.[2] The State argued that the charging period was not a material element of the molestation crimes and also argued that the initial allegations of abuse occurred when A.R. was approximately between the ages of 5 and 11 and that the change only pertained to exactly when during the overall time frame the abuse occurred.

Alvarez objected to the State's motion to amend and argued that the change to the charging period improperly expanded the time periods of the crimes from three years to four and five years. Alvarez further argued that the amendment would prejudice him because the expanded time period precluded the possibility of an alibi defense. As to count IV, Alvarez argued that the change would modify the date of the delay in disclosure from four years to four months and that if he had known of a smaller disclosure window, he may have been able to come up with another or different defense.

---

[2] The original information charged Alvarez with three counts (counts I-III) of molestation of A.R. from the time period of May 20, 2003 until May 19, 2005. The original information also charged Alvarez with one count (count IV) of molestation of A.R. from the time period of May 2005 until May 19, 2007. The State sought to amend the information to reflect that the crimes alleged in counts I-III occurred from May 20, 2003 to May 19, 2006 and that the crime alleged in count IV occurred from May 20, 2005 until May 19, 2010.

No. 48560-5-II

The trial court granted the State's motion to amend the information relying on *State v.*

*DeBolt*, 61 Wn. App. 58, 60, 808 P.2d 794 (1991).[3]

Detective Rackley then testified and explained the child interview process:

> Here in Pierce County, children that are involved as victims or witnesses of certain types of crimes are interviewed by the Child Advocacy Center by trained interviewers.

7 RP at 82.

Keri Arnold also testified. Arnold testified as to her experience as a child interviewer and her experience with forensic interviews.

Prior to Alvarez's cross-examination of Arnold, and outside the presence of the jury, Alvarez informed the trial court that he was planning to question Arnold about A.R.'s statements regarding the alleged molestation at the Chateau Rainer apartments and when A.R. alleged it occurred. The State responded that it would then follow up with Arnold about the context of A.R's report and the timing of the other alleged incidents. The State explained that it wanted the jury to understand that A.R. had disclosed multiple incidents of abuse to Arnold during the interview and not just the incident at Chateau Rainer. The court ruled that Arnold would be allowed to testify only to the incident at Chateau Rainer.

---

[3] In *DeBolt*, after the State had rested and after the defendant had testified, the State moved to amend the information to enlarge the charging period by several months. 61 Wn. App. at 60. The *DeBolt* court held that the date of an offense is a "matter of form rather than substance" and is usually "not a material part of the 'criminal charge[.]'" 61 Wn. App. at 62. The court also held that an amendment of the charging period is generally permitted, unless the amendment compromises an alibi defense or the defendant demonstrates specific prejudice. 61 Wn. App. at 62. The court noted that "the crime charged remained the same after the amendment" and, therefore, concluded that amendment of the charging dates neither violated DeBolt's constitutional rights nor resulted in prejudice. 61 Wn. App. at 58, 63.

8

During Arnold's cross-examination, Alvarez asked how old A.R. reported she was during the incident at Chateau Rainer. Arnold testified that A.R. told her that she was seven or eight years old at the time of that incident. During redirect, the State asked:

> [THE STATE] And that was specific to one particular incident, there were other—
> [DEFENSE]: Objection.
> [THE STATE] —topics?
> [THE STATE]: I'm just in general clarifying.
> THE COURT: Well, "other topics." Do you mean—could you rephrase your question, please?
> [THE STATE]: Yes, Your Honor.
> [THE STATE]: That wasn't the only incident you spoke about that day?
> [DEFENSE]: Objection.
> THE COURT: Sustained. The issue at this particular Chateau Rainier and the timing of it, that was what was opened on cross-examination.
> [THE STATE]: How long was your interview with [A.R.]?
> [ARNOLD]: I believe it was like 38, 39 minutes.
> [THE STATE]: No further questions.

8 RP at 30.

Oshan also testified at trial. Oshan testified that A.R. reported dealing with depression since she was about nine years old and that "'A.R. endorses intrusive thoughts of past trauma [and reported] that she was molested by [Reyna]'s boyfriend when she was seven or eight years old.'" 8 RP at 55 (quoting Ex. 8). Oshan stated that A.R. disclosed that she had told Reyna about the abuse but that Reyna never reported it to the authorities. Oshan testified that A.R. provided no other reports of child molestation other than reporting she was abused when she was seven or eight years old.

Vargas also testified at trial. Vargas stated that she met with A.R. seven times and that during their first meeting A.R. reported that she had been sexually abused when she was seven or

9

eight years old. The State then asked Vargas if A.R. had described any other emotional symptoms relevant to Vargas's treatment of A.R. Vargas responded:

> [A.R.] reported symptoms of depression which she stated started after that event, after that experience, increased irritability, anger outbursts, sort of mood dysregulation, so having a hard time just regulating her mood, challenges with family members and primarily with people in her family just relating, sort of a host of things related to anxiety and depression. And then also talked about kind of reliving the experience, so just kind of reliving the trauma.

8 RP at 71. When asked what she meant by "reliving the trauma," Vargas said, "Just kind of flashbacks to some of those experiences that interrupted her daily life, so feeling anxious, worried, those kind of things as a result." 8RP at 71-72. Vargas further testified there was a sense that family members did not believe A.R.

Alvarez asked Vargas what her treatment goals were for A.R. and Vargas responded that the primary goal was to work on A.R.'s relationship with Reyna. Alvarez asked if A.R.'s relationship issues with Reyna derived from the alleged abuse. Vargas responded:

> We dealt with the relationship in general, which was very complicated. At the core was kind of this experience of trauma and how her mom responded and the impact of that. A lot of our work was about how that was impacting her current functioning.

8 RP at 74. Vargas further testified that the abuse "was . . . the context" in which all of A.R.'s sessions occurred and that A.R. reported that there were multiple incidents of abuse. 8 RP at 76.

After the close of evidence, the trial court instructed the jury. The instructions included the following:

> Your decisions as jurors must be made solely upon the evidence presented during these proceedings.
> . . . .

10

If I have ruled that any evidence is inadmissible or if I have asked you to disregard any evidence, then you must not discuss that evidence during your deliberations or consider it in reaching your verdict. . . .

. . . .

The lawyers' remarks, statements and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement or comment that is not supported by the evidence or the law in my instructions.

9 RP at 15-17.

During closing argument, the State argued about the burden of proof and stated, "You've heard now several times that the State has the burden of proving to you beyond a reasonable doubt that crimes occurred, and that is absolutely true. The [d]efense does not have a burden to prove anything. The entire burden is on the State." 9 RP at 29. The State also argued about elements of the crimes charged:

So the next part of this first element I want to talk about is the term "sexual contact." Now, sexual contact has a legal definition. And it's described in the jury instructions in Instruction No. 8. Instruction No. 8 says: "Sexual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party."

So what does that mean? Well, touching is sexual. It's not an accident. We're not talking about somebody accidently [sic] touching a child when you're roughhousing or touching a child because you're helping them with hygiene or because there's a medical issue. We're talking about purposeful adult sexual touching for a reason that has to do with somebody's sexual desires.

So for this time period, Count I, when we're talking about a time period [A.R.] describes when she's approximately 6, what is the touching we're talking about? Well, we're talking about an adult man putting his hand down the pants of an approximately 6-year-old girl. There's no reason for that type of behavior here other than for sexual purposes. There's not an accident. That type of behavior is sexual. So that part of the first element is satisfied.

11

9 RP at 35-36. Alvarez's counsel also discussed the element of sexual contact during closing argument:

> Next is the definition of sexual contact because, as indicated, in order to prove a child molestation occurred in the first degree, the State has to prove that there was sexual contact. . . .
>
> Sexual contact has two things to it, touching of a sexual or intimate nature done for the purpose of sexual gratification of either of the two. Is there any evidence of sexual gratification as to what's accused of Manuel Alvarez? Is there any indication that he got anything out of this, any description of his demeanor afterwards, any description of this? There isn't. And, in fact, it really doesn't make sense, what's being described, because there is nothing that suggests that there was any gratification derived from these particular acts, if they occurred at all.
>
> . . . .
>
> And the elements that include sexual contact cannot be proved because the State has not presented any evidence to you that this was done for sexual gratification. And her answer to that was, "Well, what else could it be for?" That's not proof. That's not evidence. That's not circumstantial evidence. It's not a question of shifting the burden on the Defense to prove that it was for hyg[i]enic purposes, if it even occurred. It's not a question of trying to say that there was some other alternative. It's the State's burden to prove the case. And this is the place where it just falls absolutely flat. You have no evidence that there was any sense of sexual gratification out of any of these events.

9 RP at 50-51. In rebuttal, the prosecutor argued:

> And I'm also not quite sure what the Defense argument was regarding sexual gratification. Now, the instructions explain the concept of sexual gratification. We're not talking about sexual climax or the actual act of sexual intercourse. We're talking about something that's done for sexual purposes. And people do a lot of things for sexual purposes. And it may not be what you think of as typical behavior, but it doesn't mean it's not for sexual gratification. Some people expose themselves for sexual gratification. It may not make sense to other people, but it happens. And Andrea as a 6- and 10-year-old is not going to be able to observe—she's just not going to be able to fathom—be capable of observing with the knowledge that an adult has things that might clue you in to the person getting something sexually satisfying out of this exchange. It's just not going to happen. But the only reason an adult would stick their hand down someone's pants and rub their vaginal area is for sexual gratification purposes.

No. 48560-5-II

9 RP at 78.  The jury found Alvarez guilty of two counts of first degree child molestation. [4]

SENTENCING

The trial court sentenced Alvarez to 73 months in confinement and also ordered Alvarez

to abide by certain community custody conditions.  The community custody conditions included:

> 15.  Do not enter into any location where alcohol is the primary product, such as taverns, bars, and/or liquor stores.
>  . . . .
> 23.  Do not go to or frequent places where children congregate, (I.E. [sic] Fast-food outlets, libraries, theaters, shopping malls, play group s [sic] and parks, etc.) unless otherwise approved by the Court.  Incident (attendance . . . to work duties is allowed[)].
>  . . . .
> 27.  You are also prohibited from joining or perusing any public social websites (Facebook, Myspace, *Craigslist*, etc.), Skyping, or telephoning any sexually-oriented 900 numbers.
>  . . . .
> 29.  Do not patronize prostitutes or any businesses that promote the commercialization of sex.

Clerk's Papers (CP) at 155-56.  Alvarez appeals his conviction and sentence.

ANALYSIS

I. AMENDMENT OF THE INFORMATION

Alvarez appears to argue that the trial court erred in granting the State's motion to amend

the information.  Alvarez inadequately addresses this issue on appeal, and we do not consider it.

RAP 10.3(a).

In his assignments of error, Alvarez states that the trial court abused its discretion in

allowing the State to amend the charges against Alvarez after the presentation of evidence in

---

[4] The jury found Alvarez guilty of count I and count IV.

13

order to try and remedy defects in the State's evidence. Alvarez also baldly asserts that the amendment prejudiced him. However, in his brief, Alvarez only appears to argue that his trial counsel was ineffective for failing to object to fact of complaint testimony, which formed the basis of the amendment.

Because Alvarez fails to address how the trial court erred in allowing the State to amend the information in his brief and fails to cite any authority regarding how the trial court abused its discretion, we do not address this argument. *See* RAP 10.3(a); *see also State v. Donaghe*, 172 Wn.2d 253, 263 n. 11, 256 P.3d 1171 (2011).

## II. OPINION TESTIMONY

Alvarez argues that he was denied his constitutional right to a fair trial when multiple witnesses expressed improper opinions. The State argues that because Alvarez failed to object to any witness testimony as improper opinion testimony and fails to show manifest error, he has waived this issue for appeal. We agree with the State.

A.     *Legal Principles*

In general, appellate courts will not consider issues raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); *see* RAP 2.5(a). But a party can raise an error for the first time on appeal if it is a manifest error affecting a constitutional right. *Kirkman*, 159 Wn.2d at 926. The defendant must show the constitutional error actually affected his rights at trial, thereby demonstrating the actual prejudice that makes an error "manifest" and allows review. *Kirkman*, 159 Wn.2d at 926-27.

On appeal, a party may not raise an objection not properly preserved at trial absent manifest constitutional error. *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009) (plurality opinion); RAP 2.5(a)(3). We adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial. *Kirkman*, 159 Wn.2d at 935. We will not reverse the trial court's decision to admit evidence where the trial court rejected the specific ground upon which the defendant objected to the evidence and then, on appeal, the defendant argues for reversal based on an evidentiary rule not raised at trial. *State v. Powell*, 166 Wn.2d 73, 82-83, 206 P.3d 321 (2009). A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

It is generally improper for a witness to offer testimony concerning the credibility of another witness. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Such testimony is unfairly prejudicial to a defendant and invades the exclusive province of the jury. *Demery*, 144 Wn.2d at 759. But the fact that an opinion encompassing ultimate factual issues supports the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt. *City of Seattle v. Heatley*, 70 Wn. App. 573, 578-79, 854 P.2d 658 (1993).

An explicit or "nearly explicit" opinion on the defendant's guilt or a victim's credibility can constitute manifest error. *Kirkman*, 159 Wn.2d at 936. Testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony. *Heatley*, 70 Wn. App. at 579.

B.     *Vargas's Testimony Not Improper Opinion Testimony*

Alvarez argues that Vargas provided explicit or near explicit improper opinion testimony. Specifically, Alvarez asserts that Vargas's characterization of "'the abuse'" as an event or an experience, testimony about A.R. "'reliving the trauma,'" and testimony regarding Reyna's failure to "'take any action to stop it,'" all conveyed to the jury that Vargas believed that the abuse actually occurred. Br. of App. at 22. Alvarez further argues that Vargas improperly commented on Alvarez's guilt when she testified that the "'core'" of the issues A.R. dealt with in therapy were based on the experience of the trauma and that the abuse was the context in which all of the therapy sessions occurred. Br. of Resp't at 22.

   1. Issue Preserved for Appeal

The State argues that Alvarez failed to preserve the issue of Vargas's alleged improper opinion testimony on appeal. While Alvarez objected to Vargas's testimony as bolstering, cumulative, and irrelevant, Alvarez did not object on the basis that her testimony was improper opinion testimony.

The basis for Alvarez's objection below is different from the objection he now raises on appeal. Because we will only consider the specific objection raised in the trial court, Alvarez failed to preserve for appeal his objection to the testimony as improper opinion testimony. However, because an explicit or "nearly explicit" opinion on the defendant's guilt or a victim's credibility can infringe on a defendant's constitutional rights, a party can raise this error for the first time on appeal if the error is manifest. *Kirkman*, 159 Wn.2d at 926; RAP 2.5(a)(3).

16

2. Vargas's testimony not manifest error

Alvarez argues that Vargas's testimony about A.R. "reliving the experience" and about A.R.'s response to Reyna not reporting the abuse to the authorities conveyed to the jury that Vargas believed that A.R. was telling the truth about the abuse actually occurring. Br. of App. at 22. However, Vargas's testimony was not an explicit or near-explicit opinion on Alvarez's guilt or A.R.'s veracity.

Alvarez relies on *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987), but *Black* is distinguishable. In *Black*, an expert witness testified about a profile for rape victims, known as "rape trauma syndrome," and testified that the victim in that case fit the profile. 109 Wn.2d at 340. The Supreme Court held the testimony that the victim "fit" the profile, invaded the province of the jury, and was improper opinion testimony. 109 Wn.2d at 348-50.

Unlike *Black*, where the expert directly commented that the victim fit the profile of a rape victim, in this case, Vargas only testified to what A.R. had reported to her and described only the context of A.R.'s sessions. Vargas did not comment on A.R.'s diagnosis or comment that A.R. fit any profile of a molestation victim. Instead, Vargas informed the jury about her observations based on her conversations with A.R. Additionally, Vargas did not explicitly assert that she believed A.R.'s report of abuse. *See State v. Madison*, 53 Wn. App. 754, 760-63, 770 P.2d 662 (1989) (holding that no manifest constitutional error occurred where caseworker did not explicitly assert that she believed her client's story about being sexually abused).

17

Because Vargas did not provide any explicit or nearly explicit opinion testimony of Alvarez s guilt or A.R.'s veracity, Alvarez fails to show manifest error affecting a constitutional right. Thus, he has failed to preserve this issue for appeal and we do not further consider it.

C.      *Argument Regarding Detective Rackley's Testimony Not Preserved for Appeal*

Alvarez also argues that Detective Rackley's testimony regarding the interviewing of children who are victims of certain sexual crimes was improper opinion testimony. The State argues that Alvarez failed to preserve the issue of Detective Rackley's alleged improper opinion testimony on appeal because Alvarez failed to object to Detective Rackley's testimony below. We agree with the State.

Alvarez did not object to Rackley's testimony during trial. Because there was no objection to Detective Rackley's testimony, this issue is preserved for appeal only if it constitutes manifest constitutional error. RAP 2.5(a)(3).

Detective Rackley testified that children who are involved as victims or witnesses of certain types of crimes were interviewed by trained interviewers, and that as such, A.R. was interviewed by an interviewer. Detective Rackley merely described the procedure that police follow when a child reports abuse. At no time did Detective Rackley testify that A.R. was telling the truth or that Alvarez was guilty of molestation because A.R. was interviewed by a child interviewer. Thus, Detective Rackley's testimony was not improper opinion testimony.

Because Detective Rackley did not provide any explicit or nearly explicit opinion testimony of Alvarez's s guilt or A.R.'s veracity, Alvarez fails to show a manifest error affecting a constitutional right. Thus, he has failed to preserve this issue on appeal.

D.    *Reyna's Testimony*

Alvarez argues that multiple statements Reyna made during her testimony constituted improper opinion testimony because it showed the jury that she believed A.R.  We review each challenged statement in turn.

1. Reyna's testimony about her feelings about the abuse and why she threw Alvarez out of the home

Alvarez contends that Reyna's testimony regarding how she felt after Sears called her and discussed the abuse was improper opinion testimony.  Alvarez also argues that Reyna's testimony about why she threw Alvarez's clothing out of the apartment and testimony regarding why she kicked Alvarez out was improper opinion testimony.

At trial, Reyna testified:

> After that I felt that my life had come apart. I just wondered how was it that I had not realized.  How was it that someone I trusted and had done something like this and I hadn't even noticed it?

7 RP at 116-17.  Defense objected to the testimony as nonresponsive and moved to strike the testimony.  The trial court sustained the objection and struck the testimony.

Reyna also testified that after speaking to Sears on the telephone, she did not want Alvarez in her home anymore and said, "How am I going to have someone who's abusing my daughter live there." 7 RP at 119.[5] Defense again objected to the testimony, and the trial court the struck the statements and instructed the jury:

---

[5]  Reyna also testified that she threw Alvarez's clothing out of the home after the phone call and did so based on what the "girls" had told her.  7 RP at 119.

19

Strike the testimony, ladies and gentlemen. You cannot consider these inappropriate statements, regardless of how innocent they're made, in your deliberations.

7 RP at 119.

The trial court immediately struck these statements and orally instructed the jury not to consider the statements. The trial court's written instructions also informed the jury that it must not discuss evidence that it was asked to disregard and must not consider it in reaching its verdict. We presume the jury followed the court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009). Therefore, Alvarez's argument fails.

2. Reyna's testimony about why she took A.R. to counseling.

Alvarez also argues that Reyna provided an explicit or near explicit opinion on A.R.'s veracity when she discussed why she took A.R. to counseling.

First, Alvarez claims that over his objection, Reyna told the jury about why she took A.R. to counseling. However, a review of the record shows that Alvarez made no objection to Reyna's testimony about her reasons for taking A.R. to counseling. Thus, Alvarez must demonstrate a manifest constitutional error to have preserved this issue for appeal. RAP 2.5(a)(3).

When asked by the State if improving her relationship with A.R. was the only reason Reyna took A.R. to counseling, Reyna testified that "was one of the reasons." 7 RP at 135. Reyna also testified that she wanted A.R. to express what she felt and to study better at school. Reyna further testified that A.R. felt that Reyna did not believe her about the abuse and that she wanted A.R. to "get what she had inside out." 7 RP at 136.

20

Reyna's testimony was not explicit or near explicit testimony regarding A.R.'s veracity. Reyna's testimony did not state or imply that she believed Alvarez to be guilty or that A.R. was telling the truth, but rather demonstrated Reyna's desire to help her daughter. As such, Reyna's testimony was not improper opinion testimony.

Because Reyna did not provide any explicit or nearly explicit opinion testimony of Alvarez's guilt or veracity, Alvarez fails to show a manifest error affecting a constitutional right. Thus, he has failed to preserve this issue for appeal.

## III. PROSECUTORIAL MISCONDUCT

Alvarez argues that the State committed prosecutorial misconduct in a number of ways. Specifically, Alvarez asserts that the prosecutor improperly shifted the burden of proof to Alvarez, conflated the alleged incidents to misstate the evidence, and deliberately elicited excluded evidence. We disagree.

A. *Legal Principles*

To establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial to the defendant's right to a fair trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). If a defendant establishes the prosecutor's conduct was improper, we then determine whether the defendant was prejudiced. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Prejudice is established only if there is a substantial likelihood that the instances of misconduct affected the jury's verdict. *Emery*, 174 Wn.2d at 760.

21

Where a defendant fails to object to alleged prosecutorial misconduct, he is deemed to have waived any error unless he shows the misconduct "was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. To meet this heightened standard, the defendant must show that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. *Emery*, 174 Wn.2d at 760-61.

We accord a prosecutor some latitude to argue reasonable inferences from facts in evidence. *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). When analyzing prejudice, we do not look at the comment in isolation, but in the context of the entire case, including the arguments, the issues in the case, the evidence, and the instructions given to the jury. *Thorgerson*, 172 Wn.2d at 443. It is improper for a prosecutor to assert during closing argument facts not admitted as evidence during trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 705, 286 P.3d 673 (2012).

A criminal defendant has no duty to present evidence, and it is improper for the prosecution to infer that any such duty exists. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). We presume the jury follows the trial court's instructions. *Anderson*, 153 Wn. App. at 428.

B.      *Burden Shifting*

Alvarez argues that the State improperly shifted the burden of proof to him during closing arguments by urging the jury to apply the inference that touching of a six-year-old by an adult is presumed to be done with the intent of sexual gratification. We disagree.

Alvarez was charged with first degree child molestation. RCW 9A.44.083 defines the crime as:

> A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

RCW 9A.44.010 provides in part:

> (2) "Sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party.

Alvarez asserts that the prosecutor shifted the burden by urging the jury to presume that the essential element of "sexual gratification" was met. Br. of App. at 33 (quoting 14 RP at 78). Alvarez argues that the prosecutor told the jury that touches for reasons other than hygiene or accidents were presumed to be for sexual gratification.

Taking the prosecutor's arguments in the context of the entire case, the prosecutor did not commit misconduct. At no time did the prosecution urge the jury to infer that all touching of a six-year-old child should be presumed to be with the required intent of sexual gratification if not for hygienic purposes or if not accidental. In response to defense's argument that the State's evidence regarding sexual gratification fell flat, the prosecutor argued in rebuttal that, "here" there was no other reason for Alvarez to put his hands down the pants of A.R. besides sexual gratification. *See State v. Brown*, 132 Wn.2d 529, 566, 940 P.2d 546 (1997) (holding that the prosecutor is entitled to make a fair response to the arguments of defense counsel).

Moreover, the prosecutor told the jury that the State bore the burden of proving its case beyond a reasonable doubt and that Alvarez did not have to "prove anything." 9 RP at 29. The

prosecutor also discussed the definition of sexual contact and clarified the type of contact required for a conviction of molestation. The prosecutor argued that accidental touching and touching for hygiene was not the type of touching that qualified as sexual touching because that type of touching would not be for the purpose of gratifying sexual desires.

Taken in the context of the entire argument, the prosecutor made it clear that Alvarez had no burden of proof. The prosecutor also did not urge the jury to apply an inference that, by definition, all touching of a six-year-old was presumed to have the intent of sexual gratification unless explained. Therefore, the prosecutor did not shift the burden of proof, and Alvarez's argument fails.

C.    *Misstating the Evidence*

Alvarez also appears to argue that the prosecutor misstated the evidence about the different counts for which Alvarez was charged. Alvarez argues that the prosecutor "mixed" the alleged incidents together and added the word "rubbing" which he argues was never alleged to have occurred other than during the incident at Chateau Rainier. Br. of App. at 33. We disagree that the prosecutor misstated the evidence.

During closing arguments, the prosecutor discussed counts I, II, and III and discussed the elements the State was required to prove. The prosecutor discussed the time period for the alleged incidents and told the jury that the time period was the same for all three counts. When discussing count I, the prosecutor stated:

> What he does is he just puts his hand down her pants. He rests his hand on her pubic area—she described at trial the part where the hair is when you get older—and on her bottom. His hand doesn't move.

24

9 RP at 34.  During rebuttal, the prosecutor argued that an adult sticking their hand down someone's pants and rubbing their vagina would be for sexual gratification purposes.  These two statements form the basis of Alvarez's argument.

Reviewing the prosecutor's statements in the context of the entire argument, the record shows that at no time did the prosecutor mix the incidents together.  During closing argument, the prosecutor made clear that concerning count I, Alvarez's hand did not move.  A.R. testified that during the incident at Chateau Rainier, which formed the basis for count IV, that Alvarez moved his hand up and down over her vagina and during closing, the prosecutor's statement about rubbing came in response to Alvarez's argument that there was no evidence that he received any sense of gratification out of *any* of the alleged incidents which would include the incident alleged in count IV.  Evidence that Alvarez rubbed A.R.'s vagina was clearly in the record.

Because the prosecutor did not mix together the incidents nor add additional facts not in evidence about rubbing, the prosecutor did not commit misconduct.  Alvarez's argument fails.

D.      *Eliciting Excluded Testimony*

Alvarez also argues that the prosecutor committed misconduct by deliberately eliciting excluded evidence.  Alvarez specifically argues that the prosecutor's examination of Arnold resulted in improper bolstering of A.R.'s testimony.

Prosecutorial misconduct occurs where the prosecutor repeatedly seeks inadmissible testimony from a witness and draws repeatedly sustained objections from the defendant.  *State v. Alexander*, 64 Wn. App. 147, 155-56, 822 P.2d 1250 (1992).  Improper questions and sustained

objections may impress upon the jury that the witness holds knowledge that is favorable to the State and that it would have been revealed but for the court's rulings. *Alexander*, 64 Wn. App. at 155.

Prior to cross-examination and outside the presence of the jury, the trial court discussed the parameters of Arnold's testimony. Despite the State's argument that the jury needed to be informed that A.R. disclosed multiple incidents of abuse to Arnold during the interview, the trial court limited Arnold's testimony to the incident that occurred while A.R. lived in Chateau Rainer.

During the State's examination of Arnold, the prosecutor asked Arnold if there were other topics discussed with A.R. Alvarez objected and the trial court asked the State to rephrase the question. The prosecutor then asked Arnold if "[t]hat wasn't the only incident you spoke about that day?" 8 RP at 30. Alvarez objected again and the court sustained the objection.

Even assuming the prosecutor improperly questioned Arnold about other incidents, Alvarez fails to show that there is a substantial likelihood that the questioning affected the jury verdict. The jury had already heard A.R. testify about multiple incidents of abuse and heard Vargas's testimony that A.R. disclosed more than one incident of abuse.

Accordingly, we hold that there was no prosecutorial misconduct.

## IV. FACT OF COMPLAINT TESTIMONY

Alvarez assigns error to the trial court's admission of Reyna's and Sears's testimony as improper testimony under the "fact of complaint" doctrine. Br. of App. at 1. However, in his briefing, Alvarez does not address how the trial court abused its discretion in allowing the

26

admission of the testimony but rather asserts only that his trial counsel was ineffective in failing to properly argue that the testimony should be excluded under the fact of complaint doctrine. Therefore, Alvarez inadequately addresses this issue on appeal, and we do not consider it. RAP 10.3(a); *Donaghe*, 172 Wn.2d at 264. However, we consider his arguments below in the context of ineffective assistance of counsel.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Alvarez argues that his trial counsel provided ineffective assistance by failing to object to testimony under the "fact of complaint" doctrine and that this failure to object led to the State's prejudicial amendment to the information. We disagree.

A. *Legal Principles*

In order to show ineffective assistance of counsel, a defendant must show that defense counsel's conduct was deficient and that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Counsel's performance is deficient if, under all the circumstances, it falls below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at. 130. To show prejudice, a defendant must show a reasonable possibility that, but for counsel's purportedly deficient conduct, the outcome of the proceeding would have differed. *Reichenbach*, 153 Wn.2d at 130. We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

When reviewing deficiency, we strongly presume that counsel was effective. *State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013), *review denied*, 179 Wn.2d 1026 (2014). To rebut this presumption, the defendant bears the burden of establishing the absence of any

27

conceivable legitimate tactic explaining counsel's performance. *Reichenbach*, 153 Wn.2d at 130.

Where a defendant bases his ineffective assistance of counsel claim on trial counsel's failure to object, the defendant must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). The absence of an objection by defense counsel strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial. *State v. Edvalds*, 157 Wn. App. 517, 525-26, 237 P.3d 368 (2010), *review denied*, 171 Wn.2d 1021 (2011). Only in egregious circumstances, on testimony central to the State's case, does counsel's failure to object warrant reversal. *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007).

B.      *No Ineffective Assistance*

The fact of complaint doctrine is a hearsay exception that allows the prosecution, in criminal trials involving sex offenses, to present evidence in its case in chief that the victim made a timely complaint to someone of the assault. *State v. Chenoweth*, 188 Wn. App. 521, 532, 354 P.3d 13, *review denied*, 184 Wn.2d 1023 (2015). The rationale for this rule is to dispel the inference that a person who does not disclose shortly after being sexually assaulted must be fabricating the story. *State v. Bray*, 23 Wn. App. 117, 121-22, 594 P.2d 1363 (1979). The evidence is not hearsay because it is introduced for the purpose of bolstering the victim's credibility and is not substantive evidence of the crime. *Bray*, 23 Wn. App. at 121.

For a disclosure to be admissible under the fact of complaint doctrine, it must be made within a reasonable amount of time after the assault. *Alexander*, 64 Wn. App. at 151 (holding

this narrow exception allows only evidence establishing that a complaint was timely made). But evidence of the details of the complaint, including the identity of the offender and specifics of the act, is not admissible. *Alexander*, 64 Wn. App. at 151.

Here, Alvarez asserts that his counsel should have argued that Reyna's and Sears's testimony was stale and, therefore, did not meet the "fact of complaint" exception. He argues that trial counsel's failure to properly argue the need for excluding the testimony under the fact of complaint doctrine ultimately led to the trial court's improper grant of the State's motion amendment to the information. But Alvarez mischaracterizes the evidentiary basis for the admission of Reyna's and Sears's testimonies. The trial court did not admit any testimony under the fact of complaint doctrine.

During a pretrial motion hearing, the trial court discussed with the parties the State's expected use of witness testimony regarding A.R.'s disclosure of the abuse. The State clarified that A.R.'s statements made to her mother, aunt, family, and friends would not be admissible under the child hearsay exception. However, the State asserted that A.R.'s statements would be admissible under the "fact of complaint doctrine." The court reserved ruling on the admissibility of the testimony under the fact of complaint doctrine and stated that it would take the objections testimony about A.R.'s disclosures when they come up and would evaluate the circumstances at the time of testimony. Defense counsel agreed and stated that it would also deal with any statements from the witnesses as they arose during trial.

At trial, defense counsel objected to Sears's testimony as redundant. The trial court overruled the objection and stated that Sears's testimony was relevant and could be admitted for the limited purpose of clearing up the timeline due to A.R.'s testimony not being chronological.

To prevail on his claim, Alvarez must show that had he objected, trial counsel's objection would have been successful. *Gerdts*, 136 Wn. App. at 727. Our review of the record shows that the trial court did not admit any testimony under the fact of complaint doctrine. The trial court ruled that Sears could properly testify regarding background information and information relating to the times of the families various living situations. Neither Sears nor Reyna provided testimony to bolster A.R.'s credibility for having reported the abuse within a reasonable time of the abuse occurring, as the fact of complaint doctrine allows. Additionally, the State never asserted that A.R. was credible because she complained of the abuse shortly after the incident. Also, because it reserved ruling on the admissibility of the testimony under the fact of complaint doctrine, the trial court never examined the testimony against the elements of the doctrine and therefore testimony was never admitted on that evidentiary basis. Therefore, even if counsel had objected to Reyna's testimony under the fact of complaint doctrine, it is not likely that any objection would have been successful.

Even assuming that his trial counsel acted deficiently, Alvarez cannot show a reasonable probability that, but for counsel's errors, the verdict would have been different. Here, A.R. testified regarding the abuse and about her disclosures to her mother, her sister, and to Rodriguez. The State also never commented on A.R.'s credibility for having disclosed the

abuse.  Therefore, it is unlikely that any error would materially affect the outcome of the trial.  *See Reichenbach*, 153 Wn.2d at 130.

Alvarez fails to show both deficient performance and prejudice.  Accordingly, his ineffective assistance claims fail.

## VI.  CUMULATIVE ERROR

Alvarez argues that the cumulative effect of each error argued constitute a denial of his right to a fair trial.  Alvarez asserts that the only evidence against Alvarez was A.R.'s word and that there were serious inconsistencies of the allegations and timing of disclosures.  Alvarez further asserts that the improper witness testimony together with the prosecutor's misconduct and his own trial counsel's ineffectiveness, all prevented him from receiving a fair trial.

The cumulative error doctrine applies when a trial is affected by several errors that, standing alone, may not be sufficient to justify reversal.  *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).  Cumulative error requires reversal when the combination of errors denies the defendant a fair trial.  *Greiff*, 141 Wn.2d at 929.  Reversal is not required when there are few or no errors and the errors, if any, have little to no effect on the outcome of the trial.  *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Here, the only possible error would be the prosecutor's questioning of Arnold about whether A.R. disclosed more than one incident of abuse to her.  But there can be no cumulative error in cases where there is only one error.  *See In re Pers. Restraint of Cross*, 180 Wn.2d 664, 691, 327 P.3d 660, 678 (2014).  Thus, we reject Alvarez's cumulative error argument.

31

VII.  SENTENCING

Alvarez also argues that the trial court improperly imposed community custody

conditions 15,[6] 23,[7] 27,[8] and 29.[9]  The State concedes that the trial court improperly entered

conditions 15 and 27 and that this court should strike those conditions.  The State further asserts

that condition 23 is crime related and is not a violation of Alvarez's constitutional rights.  The

State also argues that condition 29 is only partially improper.  We agree with Alvarez that the

trial court improperly imposed conditions 15, 27, and 29, but we hold that the trial court properly

imposed condition 23.

A.      *Community Custody Principles*

A defendant may raise objections to community custody conditions for the first time on

appeal.  *See State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003).  A trial court may

require an offender to comply with any crime related prohibitions as a condition of community

custody.  RCW 9.94B.050(5)(e).  A crime related prohibition is "an order of a court prohibiting

---

[6] Condition 15 prohibits Alvarez from entering any location where alcohol is the primary product, such as taverns, bars, and/or liquor stores.

[7] Condition 23 prohibits Alvarez from frequenting places where children congregate, (i.e., fast-food outlets, libraries, theaters, shopping malls, play groups and parks, etc.) unless otherwise approved by the court.

[8] Condition 27 prohibits Alvarez from joining or perusing any public social websites such as Facebook, Myspace, Craigslist, etc., and also from contacting any sexually-oriented 900 numbers.

[9] Condition 29 prohibits Alvarez from patronizing prostitutes or any businesses that promote the commercialization of sex.

conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

We review de novo whether the trial court had statutory authority to impose a sentencing condition. *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704 (2014). If the trial court had statutory authority, we review its decision to impose the condition for an abuse of discretion. *Johnson*, 180 Wn. App. at 326. An abuse of discretion occurs when a trial court's imposition of a condition is manifestly unreasonable. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010).

B.      *Condition 15*

Condition 15 prohibited Alvarez from entering into any location "where alcohol is the primary product, such as tavern, bars, and/or liquor stores." CP at 155. Alvarez argues that this condition is not crime related. The State agrees and concedes that there was no evidence alcohol played a direct part in Alvarez's crimes. We accept the State's concession.

Because prohibiting Alvarez from going to locations where alcohol is a primary product does not directly relate to his crime of child molestation, the trial court exceeded its authority in imposing the condition. *See* RCW 9.94A.030(10).

C.      *Condition 23*

Alvarez argues that condition 23, which prohibits him from going to places where children congregate is not crime related. Alvarez also argues that condition 23 is unconstitutionally vague by failing to notify him of what he had to avoid and that the condition

infringes on his First Amendment right to freedom of association and freedom of movement. We disagree.

### 1. Crime related

Condition 23 prohibited Alvarez from going to or frequenting "places where children congregate, (I.E. [sic] Fast-food outlets, libraries, theaters, shopping malls, play group s [sic] and parks, etc.) unless otherwise approved by the Court. Incident (attendance . . . to work duties is allowed[)]." CP at 155.

RCW 9.94A.120(9)(c)(ii) authorizes the trial court to require offenders "not [to] have direct or indirect contact with the victim of the crime or a specified class of individuals." Alvarez molested A.R. when she was a child between the ages of 5 to11. Thus, prohibiting Alvarez from going to places where children of the same class as his victim is a reasonably crime related condition. *State v. Eaton*, 82 Wn. App. 723, 733, 919 P.2d 116 (1996). Therefore, this community custody condition is sufficiently crime related and the trial court had the authority to impose this condition.

### 2. Not vague

Alvarez also argues that condition 23 is unconstitutionally vague. We disagree.

The guarantee of due process, contained in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, requires that legal standards such as community custody conditions not be vague. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). To avoid vagueness, the condition must provide ordinary people fair warning of proscribed conduct and have standards that are definite enough to protect against

arbitrary enforcement. *Irwin*, 191 Wn. App. at 652-53. However, a sentencing condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct. *Irwin*, 191 Wn. App. at 652-53

Alvarez appears to assert that prohibiting him from going to places where "children congregate" does not provide fair notice and warning of what conduct he must avoid.[10] But the Supreme Court has held that it is proper for a court to order a sex offender not to frequent places where minors are known to congregate. *State v. Riles*, 86 Wn. App. 10, 18, 936 P.2d 11 (1997). In *Riles*, the court upheld a condition stating that the defendant was to avoid and not frequent "'places where minors are known to congregate.'" 86 Wn. App. at 18. The court held these terms were sufficient to notify a person of common intelligence that they were prohibited from "going to places where children commonly assemble." 86 Wn. App. at 18. The Supreme Court rejected Riles's argument that the condition precluded him from all public places. *See* 86 Wn. App. at 18.

A sentencing condition is not unconstitutionally vague merely because a person cannot predict its contours with complete certainty. *Irwin*, 191 Wn. App. at 653. The condition here is more precise than the prohibition upheld in *Riles*. *See* 86 Wn. App. at 18. This condition is not impermissibly vague.

---

[10] Alvarez cites *State v. Bahl*, 164 Wn.2d 739, 758, 193 P.3d 678 (2008) to support his vagueness argument. However, *Bahl* involves discretion exercised by community corrections officers. The condition at issue involves discretion exercised by a court.

3. No First Amendment violation

Alvarez appears to argue that community custody condition 23 implicates the First Amendment by restricting his right to freedom of association and freedom of movement. We disagree.

Limitations upon fundamental rights are permissible, provided they are imposed sensitively. *State v. Bahl*, 164 Wn.2d 739, 757-58, 193 P.3d 678 (2008). A defendant's First Amendment right may be restricted if reasonably necessary to accomplish the essential needs of the state and public order. *Bahl*, 164 Wn.2d at 757. Thus, conditions may be imposed that restrict First Amendment rights if reasonably necessary, but they must be sensitively imposed. *Bahl*, 164 Wn.2d at 757. Here, Alvarez may be restricted from frequenting certain places where children congregate, but the restrictions implicating his First Amendment rights must be clear and must be reasonably necessary to accomplish essential state needs and public order.

Condition 23 precisely limits Alvarez's access to places where children commonly congregate. The trial court clearly listed certain places that Alvarez is restricted from going to and the court balanced the important state interest of protecting children with Alvarez's rights to freely move and associate. The condition allows Alvarez to go to restricted places incidental to his work and also allows Alvarez the ability to go to the restricted places upon approval of the court. The condition precisely describes prohibited places. Because the condition is sensitively imposed, the condition did not unduly offend Alvarez's First Amendment rights.

D.  *Condition 27*

Condition 27 prohibited Alvarez from "joining or perusing any public social websites (Facebook, Myspace, *Craigslist*, etc.), Skyping, or telephoning any sexually-oriented 900 numbers." CP at 156. Alvarez argues that condition 27 is not crime related. The State concedes that no evidence of a nexus between Alvarez's crime and the specified prohibitions exists. We accept the State's concession.

Because the community custody condition is not crime related, the trial court did not have authority to impose the condition.

E.  *Condition 29*

Condition 29 prohibited Alvarez from patronizing prostitutes or "any businesses that promote the commercialization of sex." CP at 156. Alvarez contends that community custody condition 29 is not crime related. He asserts that there no evidence that patronizing prostitutes or places involved in the commercialization of sex were related to his crimes.

The State concedes that there is no evidence of a nexus between Alvarez's crime and the prohibition on patronizing establishments that promote the commercialization of sex. However, the State argues that trial court is allowed to impose conditions requiring offenders to engage in law abiding behavior and that prohibiting Alvarez from patronizing prostitutes is, therefore, not improper.

The prohibition against Alvarez patronizing prostitutes and patronizing establishments that promote the "commercialization of sex" is not reasonably crime related. There is no

evidence to suggest that patronizing such establishments or patronizing prostitutes were related to Alvarez's crime. Therefore, the trial court exceeded its authority in imposing condition 29.[11]

In summary, we affirm Alvarez's conviction but remand with instructions to strike or amend community custody conditions 15, 27, and 29, consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Melnick, J.

---

[11] In Washington, it is a misdemeanor to patronize a prostitute and trial courts are allowed to impose conditions requiring offenders to engage in law-abiding behavior. *Jones*, 118 Wn. App. at 205-06. Requiring that Alvarez not patronize prostitutes is consistent with requiring law-abiding behavior in Washington. However, we recognize that in some jurisdictions, patronizing prostitutes is not an illegal activity. *See* Denise S. Balboni, *But I Thought This Was Sin City!: Nevada's Restrictions on Advertisements for Legal Brothel Services*, 7 NEV. L.J. 548, 558 (2007), *available at* http://scholars.law.unlv.edu/cgi/viewcontent.cgi?article=1440&context=nlj